**Roger Burt WILLIAMS and Michelle S. Williams, Appellants,**

**v.**

**Richard DARDENNE and Marilyn Dardenne, Appellees.**

No. 01–10–00492–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 19, 2011.

Jacob E. Godard, Kim Bernard Battaglini, Greenberg Traurig LLP, Houston, TX, for Appellants.

Michael A. Hirsch, Schlanger, Silver, Barg & Paine, L.L.P., Houston, TX, for Appellees.

Panel consists of Justices KEYES, HIGLEY, and BROWN.

## OPINION

HARVEY BROWN, Justice.

Roger and Michelle Williams appeal from a judgment based on a jury verdict in favor of Richard and Marilyn Dardenne, awarding the Dardennes damages for foundation repairs to a house the Dardennes purchased from the Williamses. In two issues, the Williamses argue that (1) the Dardennes' claims fail as a matter of law on the basis of an "as is" provision in the parties' sale contract and the Dardennes' independent inspection of the home before the sale and (2) the award of attorney's fees is not supported by sufficient evidence. We reverse and render a take-nothing judgment on the basis of the parties' contract and therefore do not reach the second issue.

## Background

The Dardennes purchased a home from the Williamses in November 2007. They used the standard form residential resale contract promulgated by the Texas Real Estate Commission (the "TREC"). It contains a provision entitled, "Acceptance of Property Condition," which states:

> Buyer accepts Property in its present condition; provided that Seller, at Seller's expense, shall complete the following specific repairs and treatments:

In the blank space provided, the parties typed in "Termite if necessary." The contract does not contain a merger clause or disclaimer of reliance on oral representations. The Dardennes also signed an "as is" agreement with their lender, in which they represented that they had inspected the property and accepted it in its "as is" condition, without any reservation.

The sale contract contains a checked box indicating the Dardennes received a "Seller's Disclosure of Property Condition" from the Williamses, pursuant to Section 5.008 of the Texas Property Code. *See* Tex. Prop.Code Ann. § 5.008 (West Supp.2010). The seller's disclosure contains a section that asks if the seller is aware of any defects in the foundation. The Williamses checked the "no" box but also wrote in a note: "repaired." In the section permitting an explanation, the Williamses wrote: "Foundation has been repaired prior to our ownership." This reference is to foundation underpinning performed by previous owners in 1990, and these repairs were disclosed to the Dardennes.

The disclosure also asks the seller to list "any written inspection reports" the seller received within the last four years.[1] The

Williamses identified three inspection reports: one performed by "R. Michael Gray, PE" in 2005, one performed by "Sherlock Spec" in 2006, and one performed by "AU Around Pest Control" also in 2006. The Williamses did not list a document prepared by Knight Engineering Services in 2006, which they received and reviewed but did not keep.

Two of the reports that the Williamses listed, the 2005 Gary report and the 2006 Sherlock report, address the home's foundation. The 2005 Gary report is a fifty-eight-page document reflecting a home inspection performed by registered structural engineer Richard Michael Gray for a previous prospective buyer. The form of the report includes a checklist for various inspections. Gray checked the box on the form showing he had inspected the foundation, but he did not check the box indicating that the foundation was not functioning or needed repairs. With respect to the foundation, Gray concluded that the house "does exhibit damage due to foundation" but the damage was "cosmetic" and the foundation was performing "serviceably ... [within] an acceptable range of structural performance given the apparent age, construction and location of the structure." Gray further stated that the "Finish Floor Elevation Profiles ... are consistent with normal foundation surface geometry" but that the "tilt has created a floor that is much less level than what we normally find. I cannot determine the cause of the levelness issue but it is likely to be due to a combination of initial as-constructed out-of-levelness, tilt due to expansive soil movement and possibly tilt due to expansive soil movement and possibly tilt due to the previous foundation underpinning." Gray determined that neither further foun-

---

1. Section 5.008 requires that the seller's disclosure contain certain information, but this information regarding prior inspection reports is not mandated by the statute. *See* Tex. Prop.Code Ann. § 5.008(b).

dation underpinning nor concrete repairs were necessary at that time. The Dardennes received and reviewed the Gray report before closing on the property. The tilt of the floor was plainly visible to the Dardennes during their multiple visits to the home before the closing.

The 2006 Sherlock report is a twenty-page home inspection performed by Chris Brode of the TREC, who is not a structural engineer. Brode used portions of the same form used by Gray. Unlike Gray's report in 2005, Brode checked the box on the report form stating that the home's foundation was not functioning or needed repairs. Brode stated that the slab had experienced "signs of settlement as evidenced by cracks in the grade beam, garage floor, brick veneer and sheetrock" and that "[f]oundation cracking" was observed, which implied that "structural movement of the building has occurred." Brode also noted the previous foundation repairs. Marilyn Dardennes gave conflicting testimony on whether she and her husband received a copy of the Sherlock report, testifying at one point that she could not remember and at another point that they did not receive it. But she admitted that they had access to the Sherlock report before the closing and had not reviewed it. It was listed on the seller's disclosure.

The document that the Williamses did not list, prepared by Knight Engineering in 2006, is a two-page letter accompanied by two "plates" that showed repairs the Williamses could hire Knight Engineering to perform. The Williamses consider this letter to be a bid to perform foundation work on the property; the Dardennes consider this letter to be an inspection report. The Williamses neither retained Knight Engineering nor authorized them to do an inspection of the property. Before the sale to the Dardennes, the Williamses had

discussions with their former real estate agent, John Sellner, about whether to fix various items in the home, including the tilt in the home's floors. The Williamses ultimately told Sellner that they would sell the house in its current condition rather than incur the cost of fixing the floors. After their contract with Sellner expired, Sellner obtained the 2006 letter from Knight Engineering. The Williamses reiterated to Sellner, who was no longer their agent, that they were not interested in bids on fixing the floor, but Sellner left the letter on their back doorstep, along with a bill for the inspection. The Williamses returned the letter and the bill to Sellner's office and refused to pay it. But the Williamses read the letter before they returned it.

The letter is signed by Tony Knight, who was not a licensed engineer, but also bears the stamp and signature of registered engineer Dennis Spencer. It states that the home's foundation "exceeds our company criteria for a normal slope (1–inch in 15–feet)" and had slopes "as steep as 1–inch in about 3–feet." It further states that the home's overall differential is approximately 5¾ inches and "[f]rom my experience most homeowners call for assistance with foundation problems when the home is between about 2½-inches to 3½-inches in total differential and slopes exceed 1–inch in 15–feet." The letter states that "interior and exterior distress confirms that differential movements have occurred," and lists the following specific signs of distress: brick cracks and brick repairs, sheetrock cracks and wrinkled corner joints. It concludes that the foundation is experiencing "excessive differential movements," based on the pattern of sloping and distress, and recommends that the Williamses consider repairs shown on the plates and an "under slab plumbing leak test." Knight Engineering had drawn up two proposed contracts to perform

foundation repairs to the home, using two alternative methods, but these contracts were not sent to the Williamses.

Before the closing, the Dardennes had the property inspected by their independently selected inspector, Linda McCracken of Inspections Unlimited, who is not a licensed engineer. Before the inspection, Marilyn Dardenne conveyed to McCracken what was said about the home's foundation in the 2005 Gray report. McCracken's report indicated that she inspected the home's foundation but, unlike the Sherlock report, she did not check the box indicating that the foundation was not functioning or needed repairs. The McCracken report stated that the "foundation of the home was considered to be adequately performing the function for which [sic] intended." It stated that "[n]o major sheetrock cracking was observed" and that there were "no visible signs of racking or twisting in the visible roof framing and the fascia corners were tight." The report also noted that previous foundation repairs had been performed and advised the Dardennes that "the variation of the moisture content of the foundation soil is probably the most significant factor contributing to continuing foundation movement," recommending a lawn maintenance program to minimize foundation problems in the future.

The Dardennes admit that the Williamses did not interfere with McCracken's inspection of the house. Marilyn Dardenne admitted that she and her husband were aware that the house exhibited signs of prior foundation movement when they bought the house and that the Williamses did not represent to them that there was no damage due to foundation movement. She also admitted that the Williamses did not represent to them that the foundation would not continue to move after they purchased the home or that the foundation's movement would not

cause damage to the home in the future. She further acknowledged her understanding that, upon purchasing the home, she accepted the risk of further foundation movement and damage to the home.

After McCracken's inspection, the Williamses and Dardennes amended the sale contract, extending the option period and amending the "Acceptance of Property Condition" provision to require the following additional repairs and treatments before closing: "A/C coil and drain pan replacement. Rotted wood repair per inspection report. Vent will be provided for water heater. Termite treatment will be done." They did not require any foundation repairs.

The Dardennes executed a Buyer's Walk–Through and Acceptance Form before the closing, indicating that they had walked through and reviewed the property. This document contains one handwritten note: "Repair oven handle." It also confirms that the Dardennes had an independent inspection performed and reviewed that inspection report.

Approximately six to seven months after they purchased the property, "things really began to change in the house." Large cracks appeared in the walls, the Dardennes were unable to close doors, and the floor moved. The Dardennes hired Knight Engineering to inspect their foundation, at which point they discovered the existence of the 2006 Knight Engineering letter. The Dardennes then sued the Williamses, alleging violations of the Texas Deceptive Trade Practice Act (the "DTPA"), fraud and negligent misrepresentation based on the Williamses' failure to disclose the Knight Engineering letter.

The jury found in favor of the Dardennes on their DTPA, fraud and negligent misrepresentation claims. The Williamses moved for judgment notwithstanding the verdict, arguing that the Dardennes' re-

covery was barred by an "as is" clause in the sale contract in combination with the Dardennes' pre-purchase inspection of the home. The trial court denied the motion and entered judgment on the verdict, awarding the Dardennes $30,000 in actual damages, plus pre- and post-judgment interest, and $70,000 in reasonable and necessary attorney's fees.

## Standard of Review

In their first issue on appeal, the Williamses assert that the trial court erred in failing to grant their motion for judgment notwithstanding the verdict because the Dardennes' pre-purchase inspection of the property and the "as is" clause in the parties' contract negate the elements of causation and reliance necessary to the Dardennes' causes of action.

█ We review the grant or denial of a motion for judgment notwithstanding the verdict under a legal-sufficiency standard, crediting evidence favoring the jury verdict if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex.2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)); *Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204, 207 (Tex.App.-Houston [1st Dist.] 2003, no pet.). The Williamses were entitled to judgment notwithstanding the verdict if the record shows: (1) a complete lack of evidence of a vital fact; (2) the trial court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is not more than a scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810, 823; *Requena v. Otis Elevator Co.*, 305 S.W.3d 156, 162

(Tex.App.-Houston [1st Dist.] 2009, no pet.).

## Judgment Notwithstanding the Verdict

The Williams contend that the "Acceptance of Property Condition" provision in the TREC contract used by the parties constitutes an "as is" clause. That provision states that the Dardennes accepted the property "in its present condition" subject to certain negotiated repairs and treatments to be performed by the Williamses, none of which relate to the home's foundation. Numerous courts have agreed with the Williamses. *See Boehl v. Boley*, No. 07–09–0269–CV, 2011 WL 238348, at *2 (Tex.App.-Amarillo Jan. 26, 2011, pet. filed) (per curiam) (mem.op.) ("[A] TREC contract using the language 'in its current condition' has been construed to be an 'as is' agreement."); *Ritchey v. Pinnell*, 324 S.W.3d 815, 817 (Tex. App.-Texarkana 2010, no pet.) (construing same language in standard real estate contract); *Sims v. Century 21 Capital Team, Inc.*, No. 03–05–00461–CV, 2006 WL 2589358, at *2 (Tex.App.-Austin Sept. 7, 2006, no pet.) (mem.op.) (construing identical clause in TREC form contract); *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 251 (Tex.App.-Waco 2001, pet. denied) (interpreting same language in TREC earnest money contract). We need not determine whether we agree with this interpretation because the Dardennes do not contend otherwise; they make a different argument for why an "as is" provision does not bar their claims. Therefore, we will treat the clause as the equivalent of an "as is" clause.

█ A buyer who purchases property "as is" chooses "to rely entirely upon his own determination" of the property's value and condition without any assurances from the seller. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156,

161 (Tex.1995); *see also* Tex. Bus. & Com. Code Ann. § 2.316(c)(1) (West 2009) ("as is" agreement excludes implied warranties). Thus, the buyer assumes the responsibility of assessing the property's value and condition as well as the resulting risk that the property is worth less than the price paid. *Prudential,* 896 S.W.2d at 161. This evaluation on the part of the buyer constitutes a new and independent basis for the purchase, one that disavows any reliance on representations made by the seller. *Id.; see Mid Continent Aircraft Corp. v. Curry Cnty. Spraying Serv. Inc.,* 572 S.W.2d 308, 313 (Tex.1978) (in "as is" contract, buyer "has taken the entire risk as to the quality of the [property] and the resulting loss."). Thus, a valid "as is" clause negates the elements of causation and reliance for DTPA, fraud, or negligence claims relating to the value or condition of the property. *Prudential,* 896 S.W.2d at 161; *Welwood v. Cypress Creek Estates, Inc.,* 205 S.W.3d 722, 726 (Tex. App.-Dallas 2006, no pet.) ("In general, a valid 'as is' agreement negates the element of causation necessary to recover on claims regarding the physical condition of the property."); *Larsen,* 41 S.W.3d at 253 (holding that "as is" clause in earnest money contract conclusively negated causation and reliance elements of plaintiff's fraud,

negligence and DTPA claims); *Boehl,* 2011 WL 238348, at *2 (affirming summary judgment on ground that "as is" clause in TREC residential resale contract negated causation as to buyer's DTPA, fraud and negligence claims).

■■■ The Dardennes argue that the "as is" provision of the sale contract is not enforceable because it was procured by fraudulent inducement. An "as is" clause that is induced by specific misrepresentations about the condition of property will not shield the seller from liability. *Prudential,* 896 S.W.2d at 161, 162 ("A seller cannot have it both ways: he cannot assure the buyer of the condition of a thing to obtain the buyer's agreement to purchase 'as is,' and then disavow the assurance which procured the 'as is' agreement."); *see also Pairett v. Gutierrez,* 969 S.W.2d 512, 517 (Tex.App.-Austin 1998, pet. denied) (reversing summary judgment on basis of "as is" clause when there was evidence that seller knew of home's foundation problems but affirmatively represented to buyer that they were not aware of any foundation problems).[2]

■■■ "Fraudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its

2. The Dardennes do not rely on two other grounds for challenging the effectiveness of the "as is" clause: they do not claim the Williamses interfered with their inspection or actively concealed the foundation's condition. In such circumstances, an "as is" is not effective to bar liability. *Prudential,* 896 S.W.2d at 162; *see Smith v. Levine,* 911 S.W.2d 427, 433 (Tex.App.-San Antonio 1995, writ denied) (holding that "as is" clause did not negate causation on DTPA claims when seller knowingly concealed foundation damage before inspection). Nor do they claim the clause *is* unenforceable because it was not freely negotiated, such as when a boiler-plate "as is" provision is forced upon a buyer of unequal bargaining power, or that it does not meet the

standards set forth in *Forest Oil Corp. v. McAllen.* 268 S.W.3d 51, 60 (Tex.2008); *see also Kane v. Nxcess Motorcars, Inc.,* No. 01-04-00547-CV, 2005 WL 497484, at *6 (Tex. App.-Houston [1st Dist.] Mar. 3, 2005, no pet.) (mem.op.) (stating that validity of an "as is" agreement turns in part on relative sophistication of parties and whether agreement was freely negotiated) (citing *Bynum v. Prudential Residential Servs. Ltd. P'ship,* 129 S.W.3d 781, 788–89 (Tex.App.-Houston [1st Dist.] 2004, pet. denied)); *McDougal v. Stevens,* No. 04-07-00814-CV, 2009 WL 1664600, at *3 (Tex.App.-San Antonio Jan. 30, 2009, pet. denied) (mem.op.) (evaluating whether an "as is" agreement satisfied factors set forth in *Forest Oil* ).

proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex.2001). The elements of fraud are that a material representation was made, the representation was false, the speaker knew the statement was false when made, the statement was made to induce reliance, it did induce reliance, the reliance was justifiable, and the relying party suffered injury as a result. *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010); *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

The Dardennes assert that the Williamses fraudulently concealed the foundation's condition by failing to disclose the Knight Engineering letter.[3] The jury found in favor of the Dardennes on their fraudulent inducement claim, and the Williamses have not raised any challenge to the jury's findings except to argue that lack of causation and reliance are established as a matter of law. Therefore, we will assume that the Williamses' failure to disclose the Knight Engineering letter was fraudulent—i.e., material to the transaction, known to be false or misleading, and intended to induce reliance by the Dard-

ennes—and will affirm the judgment if there is legally sufficient evidence that this nondisclosure was the cause of the Dardennes' agreement to purchase the property "in its present condition." *See Prudential*, 896 S.W.2d at 162 (stating that "as is" clause is not effective to negate causation when agreement was induced by "fraudulent representation or concealment of information by the seller").

Under certain circumstances, a buyer's independent inspection of the property may conclusively defeat two elements of a fraud claim: causation and reliance. Although the courts of appeals have articulated different tests for when a buyer's independent inspection will defeat causation and reliance as a matter of law,[4] the courts have consistently applied these tests such that a buyer's independent inspection precludes a showing of causation and reliance if it reveals to the buyer the same information that the seller allegedly failed to disclose. *See Lesieur v. Fryar*, 325 S.W.3d 242, 246 (Tex.App.-San Antonio 2010, pet. filed) (holding that causation and reliance were conclusively defeated when buyer's independently obtained inspection report contained same information about foundation issues as report that sellers failed to disclose); *Ritchey*, 324 S.W.3d at

---

**3.** On appeal, the Dardennes also assert that the Williamses fraudulently misrepresented the foundation to be in a "repaired" condition based on the "repaired" note in the seller's disclosure. However, that note is fully explained in the disclosure, which states, "Foundation has been repaired prior to our ownership" and marks the "Previous Foundation Repairs" box with a note indicating that the repairs were performed by the previous owners in 1990. At trial, it was undisputed that the foundation had been repaired in 1990, before the Williamses' ownership of the property, and that the Williamses disclosed these prior repairs to the Dardennes. The expert reports obtained by both the Williamses and the Dardennes noted these prior repairs; the Williamses' seller's disclo-

sure noted these repairs; and Marilyn Dardenne testified that there was no dispute that the repairs had been performed.

**4.** *See Ritchey*, 324 S.W.3d at 819 (discussing differences between standards adopted by Dallas and San Antonio Courts of Appeals) (citing *Bernstein v. Thomas*, 298 S.W.3d 817, 822–23 (Tex.App.-Dallas 2009, no pet.); *Kupchynsky v. Nardiello*, 230 S.W.3d 685, 688–89 (Tex.App.-Dallas 2007, pet. denied); *Fernandez v. Schultz*, 15 S.W.3d 648, 652 (Tex.App.-Dallas 2000, no pet.); *Lesieur v. Fryar*, 325 S.W.3d 242, 244 (Tex.App.-San Antonio 2010, pet. filed); *Dubow v. Dragon*, 746 S.W.2d 857, 860 (Tex.App.-Dallas 1988, no writ)).

819 (holding fraud claim was not precluded by buyer's independent inspection of house because it did not reveal defects at issue); *Bernstein v. Thomas*, 298 S.W.3d 817, 822–23 (Tex.App.-Dallas 2009, no pet.) (affirming judgment in favor of buyer based on seller's failure to disclose report recommending foundation repair when both buyer and seller were aware of floor slope but only seller was aware foundation repair was needed); *Lim v. Lomeli*, No. 04–06–00389–CV, 2007 WL 2428078, at *4 (Tex. App.-San Antonio Aug. 29, 2007, no pet.) (mem.op.) (holding that buyers could not prove reliance on their real estate agent's alleged misrepresentations and nondisclosures regarding water damage to house when agent and buyer had same information available to them: visible damage and information disclosed in buyer's inspection report); *Bartlett v. Schmidt*, 33 S.W.3d 35, 41 (Tex.App.-Corpus Christi 2000, pet. denied) (reversing judgment awarded against seller on basis of restrictions on property when seller represented that there were no restrictions on property but buyer subsequently obtained title report from which seller concluded that there were no restrictions despite presence of information in title report sufficient to disclose restrictions); *Dubow v. Dragon*, 746 S.W.2d 857, 860 (Tex.App.-Dallas 1988, no writ) (affirming summary judgment in favor of seller when buyer obtained independent inspection of foundation and estimates for foundation repair before purchasing house

and negotiated modification of contract in light of same).[5] This is consistent with the principle that a party who has actual knowledge of specific facts cannot have relied on a misrepresentation of the same facts. *See Camden Mach. & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 311 (Tex. App.-Fort Worth 1993, no writ) (stating, in case where seller failed to disclose prior foundation repair but buyer discovered foundation settling in independent investigation, "When a person makes his own investigation of the facts, and knows the representations are false, he cannot, as a matter of law, be said to have relied upon the misrepresentations of another.").

■ The issue, then, is whether the Dardennes presented any evidence of reliance to support their claim for fraudulent inducement. *See Grant Thornton*, 314 S.W.3d at 923 (reliance is necessary element of fraud claims); *Aquaplex*, 297 S.W.3d at 774 (same). In the context of fraudulent inducement, this requires evidence that the claimant would not have entered into the contract but for the alleged misrepresentation or fraudulent nondisclosure. *See ISG State Operations, Inc. v. Nat'l Heritage Ins. Co.*, 234 S.W.3d 711, 716 (Tex.App.-Eastland 2007, pet. denied) (stating that ordinary detrimental reliance is not sufficient to support fraudulent inducement claim; claimant must show that it was induced into executing contract) (citing *Haase*, 62 S.W.3d at 798); *Procter v. RMC Capital Corp.*, 47 S.W.3d 828, 834

**5.** Additionally, an independent inspection will not preclude causation and reliance when the seller interferes with the buyer's ability to fully discover the defect upon inspection, such as by covering up evidence of the defect or, if the inspection reveals evidence of the defect but the seller misleads the buyer about the nature or cause of such evidence. *See Kupchynsky*, 230 S.W.3d at 688–89 (affirming judgment against home builder when buyer's inspection revealed recurring water on the balcony, in response to which builder falsely

represented that house was "built that way" and that he had performed drainage "per the blue prints"); *Fernandez*, 15 S.W.3d at 652 (affirming judgment against seller when seller made cosmetic repairs to conceal termite damage inside house and expressly misrepresented in disclosure that he had no knowledge of any termite problems, though buyer's inspection uncovered termites in exterior of house but not interior of house). The Dardennes, however, do not make such a claim here.

(Tex.App.-Beaumont 2001, no pet.) (holding that home buyer seeking to avoid effect of "as is" clause on basis of fraudulent inducement must put forth some evidence that he would not have assented to "as is" clause in contract but for seller's misrepresentations about property condition at issue); *see also Dallas Farm Mach. Co. v. Reaves,* 158 Tex. 1, 12–13, 307 S.W.2d 233, 240 (1957) (adopting the rule: "If one is induced to go through the form of making a contract because of some fraud or misrepresentation made by the other party or his agent, relative to a material element of the agreement, *such that if he had known the truth he would not have given his assent,* the contract may be avoided by him.") (quoting 1 *Elliot on Contracts* § 70 (1913), emphasis added). Here, the only evidence in the record relating to this issue is the following testimony:

> [Counsel]: Knowing now what you know about the performance of the slab, the condition, the foundation at the time you bought it, would you have still bought the home?
>
> [Ms. Dardenne]: We would only have bought the home if we knew the foundation could be repaired or if the price would be reduced enough that we could have a credit to pay for it to be repaired.
>
> We wouldn't have bought it knowing it was like this.

This testimony is no evidence that the Dardennes would not have purchased the property if the Knight Engineering letter had been listed in the seller's disclosure. What the Dardennes knew at the time of trial included a great deal more than what was contained in the Knight Engineering letter. There was extensive evidence that the home suffered significant foundation-related damage after the Dardennes purchased it. Thus, the fact the Dardennes would not have entered the agreement knowing the full extent of the future foundation damage in the years that followed is no evidence that the Dardennes would not have entered the sale agreement in 2006 if the Knight Engineering letter had been listed in the Williamses' seller's disclosure. *See ISG State Operations,* 234 S.W.3d at 718 ("The absence of any testimony that the Subcontract would not have been executed but for NHIC's misrepresentation is fatal to ISG's fraudulent inducement cause of action."). There is also no evidence in the record that the Dardennes would have read the Knight Engineering letter if it had been listed in the seller's disclosure. The Dardennes did not review the Sherlock report, which was listed in the disclosure. The Dardennes testified that they reviewed the Gray report, not the Sherlock report. The Williamses were not obligated to provide a copy of the reports listed in the seller's disclosure and could not have provided a copy of the Knight Engineering report because they had not kept it.

The absence of reliance evidence is particularly troublesome in this case, because the information contained in the undisclosed report was duplicative of the information contained in the reports that were disclosed. The chart below compares the information in the Knight Engineering letter to the information in the other, disclosed reports:

| Knight Eng'ring Letter | Gray Report | Sherlock Report |
|---|---|---|
| | **regarding slope:** | |
| "exceeds our company criteria for a normal slope" "as steep as 1–inch in about 3–feet" overall differential of approximately 5¾-inches. | "much less level than what we normally find"; charts show elevations of the floor from side to side and from front to rear on both sides of | |

| | the house, with overall differential up to approx. 6 inches | |
| --- | --- | --- |
| **regarding damage:** | | |
| "interior and exterior distress" show "differential movements have occurred" lists signs of distress: brick cracks and brick repairs, sheetrock cracks and wrinkled corner joints | "exhibit[s] damage due to foundation movement" lists signs of distress: visible fractures in the foundation surface, "stair-step" cracks in the brick veneer, diagonal cracks in the stucco, and "separations between materials" | "structural movement of the building has occurred" rate of movement could not be predicted in one-time inspection, but it should be monitored in the future "slab has experienced signs of settlement" identifies signs of distress: cracking in the foundation, cracks in the grade beam, brick veneer, garage floor and sheetrock |
| **regarding repair:** | | |
| recommends foundation repairs | indicates repairs not currently needed | recommends foundation repairs |

In sum, the reports disclosed to the Dardennes by the Williamses contain the same information as the Knight Engineering letter. *See Lesieur,* 325 S.W.3d at 247 (holding that, when seller failed to disclose inspection report to home buyer, issue was whether undisclosed report contained any information not available to buyer in buyer's independently obtained inspection report);[6] *Lomeli,* 2007 WL 2428078, at *4 (holding that buyers could not prevail against seller for nondisclosure of water damage problems in home when information available to sellers was available to buyers); *Cole v. Johnson,* 157 S.W.3d 856, 860–61 (Tex.App.-Fort Worth 2005, no pet.) (holding that buyer could not prevail on suit against seller for nondisclosure of refund on certain foundation repairs and cancellation of related warranty because signs of foundation issues and history of foundation repair was otherwise disclosed to buyer); *Camden Mach. & Tool,* 870 S.W.2d at 312–13 (holding that seller's failure to disclose prior foundation repair could not support recovery when buyer was aware, before sale, that foundation had suffered major settling). Thus, the

Dardennes needed to prove that, if the Williamses had disclosed the Knight Engineering letter, they (1) would have requested a copy and read it and (2) would not have agreed to purchase the property under the existing sale contract as a result. Marilyn Dardennes's testimony regarding what they would have done in light of their current knowledge does not satisfy this burden.

Because there is no evidence that the Dardennes would not have entered into the contract to purchase the property if the Williamses had listed the Knight Engineering letter in their disclosure, the trial court erred in failing to grant the Williamses' motion for judgment notwithstanding the verdict on the Dardennes' fraudulent inducement claim. *See City of Keller,* 168 S.W.3d at 810, 823 (standard for granting judgment notwithstanding the verdict); *Requena,* 305 S.W.3d at 162 (same). Because the "as is" clause in the parties' contract was not fraudulently induced and the Dardennes raise no other challenge to its enforceability, the clause precludes the Dardennes from establishing

---

**6.** We note that factually, this case is very similar to *Lesieur,* 325 S.W.3d at 244. However, because there is no evidence of reliance in this record, we need not rely on the information otherwise disclosed to the Dardennes to reach our holding.

the elements of causation and reliance with respect to their fraud, DTPA, and negligent misrepresentation claims against the Williamses. *See Prudential,* 896 S.W.2d at 161–62; *Welwood,* 205 S.W.3d at 726–27; *Larsen,* 41 S.W.3d at 253. The trial court thus erred in failing to grant the Williamses' motion for judgment notwithstanding the verdict on all claims asserted by the Dardennes in this action.

### Conclusion

We reverse the trial court's judgment and render judgment that appellees Richard and Marilyn Dardenne take nothing on their claims against appellants Roger and Michelle Williams. Because of our disposition, we need not reach the Williamses' second issue on appeal.