**Opinion issued June 29, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00408-CV

———————————

## MARK AND KELLY HALL, Appellants

## V.

## RANDY AND MELINDA ROGERS, Appellees

On Appeal from the 215th District Court
Harris County, Texas
Trial Court Case No. 2015-55294

## MEMORANDUM OPINION

Appellants, Mark and Kelly Hall (the "Halls"), sued appellees, Randy and Melinda Rogers (the "Rogerses"), for alleged failures to disclose known defects of residential property the Halls purchased from the Rogerses. At the close of the Halls' evidence in the underlying jury trial, the Rogerses moved for a directed verdict on

the ground that the Halls' contractual acceptance of the property "in its present condition" barred their claims. The trial court granted the motion for directed verdict and entered a final judgment that the Halls take nothing on their claims. In two issues on appeal, the Halls contend the trial court erred by (1) directing a verdict against them and (2) excluding evidence of their attorney's fees.

We affirm.

## Background

In September 2013, the Halls purchased the Rogerses' home in the Powder Mills Estates subdivision in Tomball, Texas. After living in the home for a few months, the Halls discovered that "multiple sink holes" had formed under the deck at the back of the home, which the Halls alleged reduced the value of the property and were expensive to remediate. They learned the Rogers had removed a collapsed retaining wall from the property and replaced it with underground piers or posts but did not disclose either the retaining wall's prior existence or its removal and replacement in connection with the sale.

The Halls sued the Rogerses for breach of contract, statutory and common-law fraud, fraudulent inducement, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and unjust enrichment.[1] The Halls sought

---

[1] The Halls also sued their home inspector, the Rogerses' real estate agent, and a title company. The other defendants were dismissed or nonsuited before the case

2

actual damages and "all reasonable and necessary attorney's fees" incurred by them.[2]

Common to all of the Halls' claims was the allegation that the Rogerses failed to disclose certain facts or made misleading and false statements about the condition of the property.

The Rogerses responded, asserting that the Halls' claims were barred because the parties' real estate contract included the Halls' agreement to purchase the property "as is." The contract at issue is a *One to Four Family Residential Contract (Resale)*, a standard form agreement promulgated by the Texas Real Estate Commission ("TREC"). Under the section heading "Property Condition," the contract indicates the Halls' receipt of a Seller's Disclosure Notice from the Rogerses and their agreement to "[a]ccept the property in its present condition." The contract gave the Halls the right to have the property inspected and noted that their agreement to accept the property "in its present condition" did not preclude them from inspecting the property, negotiating repairs, or terminating the contract during a ten-day option period negotiated by them.

As indicated in the contract, the Rogerses executed a standard form Seller's Disclosure Notice and a Supplemental Seller's Disclosure Notice in connection with

---

proceeded to trial. The Rogerses were the only defendants remaining at the time of trial.

[2] The Halls also sought exemplary damages on a theory of gross negligence. But they have not challenged the dismissal of their gross negligence claim on appeal.

listing the property for sale.[3] The Seller's Disclosure Notice states at the top of the

form that it was submitted pursuant to the requirements of Section 5.008 of the Texas

Property Code[4] and notes in capital letters:

> THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER, SELLER'S AGENTS, OR ANY OTHER AGENT.

The Supplemental Seller's Disclosure instructed the Rogerses, as the sellers, to

answer based not only on their personal knowledge "but also on any second-hand

knowledge obtained by [them] from any source."

In the Seller's Disclosure Notice, the Rogerses answered "no" to the question

whether they were aware of any condition of the property with respect to improper

drainage, soil movement, water penetration, subsurface structure or pits, or other

structural repairs. They also answered "no" to the question whether they were aware

---

[3]     The Seller's Disclosure Notice reflects that both Randy and Melinda Rogers signed on April 15, 2013, about four months before the Halls contracted to buy the home and about five months before the sale closed. The Supplemental Seller's Disclosure was dated around the same time, on March 15, 2013, by Randy and April 15, 2013, by Melinda.

[4]     TEX. PROP. CODE § 5.008(a) (instructing that "seller of residential real property comprising not more than one dwelling unit located in this state shall give to the purchaser of the property a written notice as prescribed by this section or a written notice substantially similar to the notice prescribed by this section which contains, at a minimum, all of the items in the notice prescribed by [subsection (b)].").

of "any item, equipment, or system in or on the [p]roperty that is in need of repair" and which had not previously been disclosed in the notice. And in the supplemental disclosure, the Rogerses again indicated that they did not know of or had not heard of any prior water penetration or improper drainage at the property.

During the contract option-period, the Halls hired a TREC-licensed inspector to investigate the condition of the property. The inspector delivered to the Halls a written inspection report, which referenced "[m]inor erosion on right side of home," and pointed out that "[t]he gutter at the rear is missing the 90 degree elbow to direct water away from the foundation." The Halls asked the Rogerses to take certain actions to repair defects or conditions identified by the inspector, including providing covers for electrical boxes in the attic and repairs to the home's hot water heater and irrigation and septic systems. The requested repairs were completed before the closing date of the sale. The Halls did not request any action related to soil erosion or stability.

The evidence the Halls presented to the jury at trial included the residential real property sale documents, evidence of the costs to address the sink holes on the property, and the testimony of multiple witnesses. Mark Hall testified that his complaint concerned the Rogerses' failure to disclose that they had removed a retaining wall. He stated that he relied on the Rogerses' disclosure notices in

deciding to buy the property and had the Rogerses disclosed the retaining wall's collapse and removal, he would not have purchased the property.

Randy Rogers ("Randy") testified that the home purchased by the Halls was constructed by a custom-home builder in 1999. That same year, Randy elected to install a forty- or sixty-foot retaining wall "to raise the level of the yard" and make the yard "more manageable." He asserted the decision was made for aesthetic reasons, not for soil stability, and not at the recommendation of any engineer. Sometime later, he modified the retaining wall to add an additional two feet of height to "make it easier to mow the lawn," and the retaining wall collapsed as a result.[5] He did not reconstruct the retaining wall; instead, he hired a contractor to remove the entire retaining wall and bury a post or piers underground to hold the soil in place.[6] Thereafter, he did not notice any problems in that area with regard to soil movement or erosion.

Randy acknowledged that another area of the property had, for a time, poor drainage as a result of the gutters on the house being removed. He explained that,

---

[5] Randy could not recall the specific date that the retaining wall was modified or the specific date of the collapse. He estimated that the retaining wall collapsed either at the beginning or middle of the decade between the years 2000 and 2010.

[6] Randy admitted that the underground post or piers would not have been visible to someone viewing the property and that he answered "no" to the question on the Seller's Disclosure Notice as to the presence of any subsurface structure on the property.

several years before he completed the seller's disclosure, he had removed the gutters from the back of the house so that the house could be painted. After the gutters were removed, instead of running through the gutters, rainwater ran underneath the deck on the back of the house and "created some washouts." He addressed the problem by reinstalling the gutters and filling the washed-out areas under the deck with sand. After this repair, he did not notice any further soil movement or problem with drainage near the back deck.[7]

The Halls retained David Yancy, a civil engineer with knowledge in retaining wall design, to testify as an expert witness regarding soil erosion. Yancy explained that the property had a steep grade. He observed soil under the back deck that was not homogenous, leading him to believe that a fill material had been added in that area to address erosion. In his opinion, the erosion under the back deck was severe enough that it could not have been caused by a one-time event or developed in the

---

[7] Through Randy's testimony, the Halls made an offer of proof regarding two previous lawsuits concerning the property. The first was a 2002 lawsuit filed by the Rogerses against their home builder. The Rogerses alleged defects in the building material and craftsmanship, including a leaky toilet, inferior quality paint, a cracked concrete driveway, and insufficient duct work for the air-conditioning system. The second lawsuit was a small-claims action filed by the Rogerses against the neighborhood homeowners' association concerning tree removal costs. Randy acknowledged he did not disclose the lawsuits on the Seller's Disclosure Notice in response to a question regarding "[a]ny lawsuits or other legal proceedings directly or indirectly affecting the [p]roperty." The Halls have not appealed the exclusion of this evidence.

time the Halls had owned the property.[8] In other words, in Yancy's view, the property suffered from long-term site instability at the time it was purchased by the Halls. Yancy further opined that the condition would worsen. Because retaining walls mitigate site instability, Yancy recommended that the Halls install a retaining wall and "vegetative armoring" to hold the soil in place.

Yancy would not necessarily expect a homeowner to understand the structural problems that may result from constructing a home near a steep grade. He acknowledged that homeowners must rely on professionals, such as an engineer to design a proper solution and a contractor to properly install it. In addition, although he had not spoken with any engineer or builder who worked on the property and had no knowledge that any engineer had informed the Rogerses of the necessity of a retaining wall, Yancy opined that the information had been conveyed to the Rogerses based on "documents that say that."

The "documents" referenced by Yancy include (1) a single-page summary of the purported findings of the architectural control committee of the neighborhood homeowners' association, wherein the committee "[a]pproved per the attached letter" a February 1999 application from the Rogerses' homebuilder for a "retaining

---

[8] On examination by the Halls' counsel, Yancy affirmatively answered a hypothetical question as to whether if Randy had "entered to the bottom area of the deck through the access panel at any time prior to December 17, 2013 [when Yancy inspected the property], . . . he would have been able to observe the conditions [of erosion] under the deck."

8

wall addition," and (2) single-page letter signed by the homebuilder which stated in its entirety: "The two oaks that are buried in the building pad are going to need to be removed. We will be bringing the building pad down 3 feet, and adding a retaining wall as per the engineer's recommendations."[9] The upper left corner of the letter includes a notation that it concerns "Powder Mills Estates, Architectural Control Committee, Re: Lot 47 Block 1, Randy Rogers." Although Randy's name appears on the document, Yancy acknowledged the document did not itself indicate that the Rogerses had received a copy of the homebuilder's letter or were made aware of any engineer's recommendation. No engineering documents were attached.

When the Halls attempted to offer evidence of the attorney's fees they incurred in prosecuting their claims, the Rogerses objected that the evidence was inadmissible because the Halls had not disclosed their counsel's hourly rate, total number of hours, or manner of calculating fees before trial. The trial court sustained the objection and excluded the testimony and billing records of the Halls' counsel.

After the Halls rested their case, the Rogerses moved for a directed verdict on the ground that there was no evidence to avoid enforcement of the "as is" clause in

---

[9]    With reference to the homebuilder's letter, Yancy testified that a "building pad" is the soil on which a building's foundation rests. He further testified that the reduction of the building pad would work in tandem with a retaining wall to control the stability of the site. He expressed "no doubt" that the retaining wall was added "to control site stability and slope."

the parties' contract. The trial court granted the motion, and later entered a judgment that the Halls take nothing on their claims. The Halls appealed.

**Standard of Review**

A trial court may direct a verdict in favor of a defendant when: (1) a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery; or (2) the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). When, as here, we are reviewing a directed verdict granted on an evidentiary basis, we must decide whether there is any evidence of probative value to raise a fact issue on the material questions presented. *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 304 (Tex. 1988). If there is conflicting evidence of probative value on any theory of recovery, a directed verdict is improper and the case must be remanded for the jury's determination of that issue. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994). We must "consider all of the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence." *Id.*

## Directed Verdict

In their first issue, the Halls argue the trial court erred by directing a verdict against them because there was at least some evidence that their agreement to accept the residential property in its present condition was induced by fraudulent representations and concealed information about the property's defects and, thus, the enforceability of the present-condition clause was a fact issue for the jury.

### A.     Applicable law

When buyers contract to buy something "as is," they agree to make their own appraisal of the bargain and to accept the risk that they may be wrong. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995); *Van Duren v. Chife*, 569 S.W.3d 176, 185 (Tex. App.—Houston [1st Dist.] 2018, no pet.). The sellers give no express or implied assurances as to the value or condition of the thing sold. *Prudential*, 896 S.W.2d at 161. An enforceable as-is clause thus negates the elements of causation and reliance on claims relating to the sale. *Id.*; *see Williams v. Dardenne*, 345 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("[A] valid 'as is' clause negates the elements of causation and reliance for DTPA, fraud, or negligence claims relating to the value or condition of the property."); *Welwood v. Cypress Creek Estates, Inc.*, 205 S.W.3d 722, 726 (Tex. App.—Dallas 2006, no pet.) ("In general, a valid 'as is' agreement negates the element of causation necessary to recover on claims regarding the physical condition

of the property."); *Cherry v. McCall*, 138 S.W.3d 35, 40 (Tex. App.—San Antonio 2004, pet. denied) ("Because the [buyers] contracted to accept the property 'as is,' they cannot, as a matter of law, prevail on their breach of contract claim.").

An as-is clause generally is enforceable if it was a significant part of the basis of the bargain, rather than an incidental or boilerplate provision, and was entered into by parties of relatively equal bargaining position. *Prudential*, 896 S.W.2d at 162; *Bynum v. Prudential Residential Servs.*, 129 S.W.3d 781, 789 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). But two scenarios may render a valid as-is clause unenforceable. *Van Duren*, 569 S.W.3d at 185. The first involves fraudulent inducement. *Prudential*, 896 S.W.2d at 162; *Bynum*, 129 S.W.3d at 788. When sellers secure the buyers' agreement to an as-is clause through false assurances about the value or condition of the thing being sold or by the concealment of information as to its value or condition, the as-is clause does not bar claims against the sellers. *See Prudential*, 896 S.W.2d at 161–62; *Williams*, 345 S.W.3d at 124–25. Buyers also are not bound by an as-is clause if the sellers impair or obstruct the buyers' right to inspect the property. *See Prudential*, 896 S.W.2d at 162; *Bynum*, 129 S.W.3d at 788–89.

Buyers challenging the enforceability of an as-is clause bear the burden of presenting evidence as to at least one of these exceptions. *See Santibanez v. Diron*,

No. 01-16-00231-CV, 2017 WL 343609, at *3 (Tex. App.—Houston [1st Dist.] Jan. 24, 2017, no pet.) (mem. op.).

## B.  Analysis

The TREC contract executed by the Halls provided for their acceptance of the property "in its present condition." This Court has held that the language in this present-condition clause operates as an "as-is" clause. *Van Duren*, 569 S.W.3d at 186 (noting that present-condition clause was not ambiguous and was "a readily understood equivalent of 'as is'"); *accord Ritchey v. Pinnell*, 324 S.W.3d 815, 820 (Tex. App.—Texarkana 2010, no pet.) (construing "present condition" language in standard form residential real estate contract as "as-is" clause); *Fletcher v. Edwards*, 26 S.W.3d 66, 75 (Tex. App.—Waco 2000, pet. denied) (same).

Although the Halls have described the contract's present-condition language as merely a "purported" as-is clause, they have not advanced any alternative interpretation of the language. Neither have the Halls advanced any argument that the present-condition clause is mere boilerplate and not a term freely negotiated by parties of relative equal bargaining power and sophistication as part of an arms-length transaction, in which both sides were represented by licensed real estate agents. *See Van Duren*, 569 S.W.3d at 186.

The Halls argue instead that the present-condition clause is unenforceable because their agreement to it was induced by fraudulent representations or

13

concealment of information concerning the condition of the property. The Halls do not assert that the Rogerses orally misrepresented the condition of the property; rather, they assert that their agreement was procured through a Seller's Disclosure Notice and Supplemental Seller's Disclosure that omitted material information about the removal of the retaining wall and the existence of subsurface structures or pits, water penetration, and soil movement on the property.[10] We thus consider whether the evidence presented at trial raised a fact issue as to alleged conditions that were either misrepresented or concealed in the Seller's Disclosure Notice and Supplemental Seller's Disclosure.

Under Section 5.008 of the Texas Property Code, a seller of certain residential real property is required to give written notice to the buyer of his or her knowledge of the condition of the property, in a form substantially similar to that prescribed in the statute. *See* TEX. PROP. CODE § 5.008(a), (b). In this case, the Rogerses completed the Seller's Disclosure Notice promulgated by the Texas Association of Realtors, which appears to be substantially similar to the form of the statutory notice. *See Sherman v. Elkowitz*, 130 S.W.3d 316, 320 (Tex. App.—Houston [14th Dist.] 2004,

---

[10] The Halls also complain in their brief that the Rogerses failed to disclose prior lawsuits against their homebuilder and homeowners' association, but they have not pointed to any place in the record where the evidence of the prior lawsuits was admitted and they have not challenged its exclusion.

no pet.) (observing that disclosure notice promulgated by Texas Association of Realtors is substantially similar to form of TEX. PROP. CODE § 5.008(b) notice).

The Seller's Disclosure Notice states at the top of the form, in all capital letters, that it is "A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY THE SELLER." Similarly, the Supplemental Seller's Disclosure instructs that it is completed based on the seller's knowledge, whether personal or second-hand. This reflects the legal standard that a seller is only required to complete the Seller's Disclosure Notice to the best of his or her belief and knowledge as of the date it is signed. TEX. PROP. CODE § 5.008(d) ("The notice shall be completed to the best of seller's belief and knowledge as of the date the notice is completed and signed by the seller."); *accord Van Duren* 569 S.W.3d at 189 (concluding that Section 5.008(d) requires "only that the Notice be completed to the best of the seller's belief and knowledge as of the date the notice is completed and signed" but "does not impose a continuing duty to update the Notice" (internal quotation and citation omitted)). "A seller has no duty to disclose facts he [or she] does not know. Nor is a seller liable for failing to disclose what he [or she] only should have known." *Prudential*, 896 S.W.2d at 162 (citation omitted). In addition, a seller is not required to disclose any knowledge of past conditions on the property which are not known to exist at the time the Seller's Disclosure Notice is signed. *See Bynum*, 129 S.W.3d at 795; *Van*

15

*Duren*, 569 S.W.3d at 189. Knowledge of a past condition does not establish knowledge of a present defect. *Van Duren*, 569 S.W.3d at 189; *Birnbaum v. Atwell*, No. 01-14-00556-CV*,* 2015 WL 4967057, at \*7 (Tex. App.—Houston [1st Dist.] Aug. 20, 2015, pet. denied) (mem. op.); *Sherman*, 130 S.W.3d at 322. Thus, a seller has no duty to disclose a condition or defect which was previously repaired or remedied. *See Pfeiffer v. Ebby Halliday Real Estate, Inc.*, 747 S.W.2d 887, 890 (Tex. App.—Dallas 1988, no writ) ("[R]epairs correct defects, not prove their continued known existence.").

Viewed in the light most favorable to the Halls, the evidence presented at trial does not raise a fact issue as to whether the Rogerses induced the Halls' agreement to purchase the property "in its present condition" by fraudulently representing or concealing the condition of the property in the Seller's Disclosure Notice and Supplemental Disclosure Notice. *See Prudential*, 896 S.W.2d at 162; *see also Van Duren*, 569 S.W.3d at 188 ("To show fraudulent inducement . . . the [appellants] must show that [the appellee] made a false material representation, knew it was false when made, intended to induce reliance, and did induce reliance.").

The Halls argue that Randy's testimony about the collapsed retaining wall is evidence of fraudulent inducement because the Rogerses did not disclose either the prior existence or removal of the retaining wall in the Seller's Disclosure Notice and Supplemental Seller's Disclosure. Randy's testimony established that at the time he

completed the Seller's Disclosure Notice, the retaining wall, which had collapsed years before, had been completely removed from the property. The Rogerses then had posts and beams installed into the ground to manage the slope of the hill on the property. Randy stated that his decisions regarding the retaining wall were made for aesthetic reasons and to make the property easier to mow or manage, not at the recommendation of an engineer.

This testimony is not evidence that the Rogerses knew of but fraudulently represented or concealed material information regarding the condition of the property. *See Birnbaum*, 2015 WL 4967057, at *7 (noting that knowledge of repaired defect is not same as awareness of existing defect). In the remaining years the Rogerses lived on the property, Randy did not notice any problems in the area of the retaining wall with regard to soil movement or erosion. The only soil movement he noticed resulted from the removal of the gutters on the back of the house when the house was painted, which Randy testified caused rainwater to run underneath the deck and wash out some soil. Randy explained that he filled in that area with dirt and replaced the gutters, correcting the problem. After that repair, he did not recall any other issues with drainage or soil movement on the property.

Yancy's expert testimony also did not raise a fact issue as to whether the Rogerses knew of but fraudulently represented or concealed the condition of the property. Although Yancy testified that documents showed the Rogerses were aware

17

that an engineer recommended installation of a retaining wall during the construction of the home in 1999, Randy denied any awareness of such a recommendation, and the documents admitted into the evidence do not support an inference contrary to Randy's testimony. The homeowners' association's architectural control committee's findings concern an application for a retaining wall submitted by the Rogerses' homebuilder, not by the Rogerses themselves. Similarly, the letter stating the engineer's recommendation of a retaining wall was signed by the homebuilder, not the Rogerses. And nothing in the letter suggests that the Rogerses were aware of that recommendation or even the homebuilders' correspondence with the architectural control committee, a point Yancy acknowledged in his testimony.

In this regard, the record is distinguishable from *Ivy v. Garcia*, a case on which the Halls rely. *See* No. 03-18-00545-CV, 2019 WL 3756483, at *3–4 (Tex. App.—Austin Aug. 9, 2019, no pet.) (mem. op.). Like the Halls, the buyer of residential real property alleged that the sellers had failed to disclose a previous fire on the property. *Id.* at *1–2. The appellate court held that a genuine issue of material fact existed as to enforceability of the as-is clause in the parties' contract based in part on an incident report from the local fire department. *Id.* at *4. The incident report noted that a fire department official "[m]et [with] owner who stated there was a small fire behind the washer and was extinguished[.]" *Id.* Viewed in the light most favorable to the buyer, this evidence raised a fact issue as to the sellers' awareness of the

18

previous fire. *See id.* But the incident reported in *Ivy* is unlike the evidence in this case because the documents on which the Halls rely do not suggest that the Rogerses had knowledge of any engineer's recommendation to install a retaining wall for the purpose of site stability.

Yancy's testimony does not otherwise support any inference of knowledge on the part of the Rogerses. He testified that the erosion he observed under the back deck was too severe to be attributable to a single event or the passage of time between when the Halls purchased the property and his inspection, and he attributed the cause of the erosion to long-term site instability. But he acknowledged that he would not necessarily expect a homeowner to understand or recognize the site stability challenges associated with constructing a home near a steep grade. Rather, he would expect homeowners to rely on professionals.

Similarly, although Yancy observed that the dirt under the back deck was not homogenous—presumably in the area where Randy testified that he added sand— Yancy's testimony did not suggest that the Rogerses knew there was erosion under the deck of the house beyond the rainwater washouts which Randy attributed to the gutters being removed from the house. At most, Yancy may have raised a fact issue as to what the Rogerses "should have known" about the property. But that is not sufficient. *See Prudential*, 896 S.W.2d at 162.

19

In sum, there is no evidence that Rogerses knew of but fraudulently represented or concealed information regarding the condition of the property, and thus there is no evidence that the Halls' agreement to purchase the property "in its present condition" was fraudulently induced. The absence of such evidence compels a conclusion that the present-condition clause in the parties' contract precludes the Halls from establishing the elements of causation and reliance with respect to their fraud, DTPA, and negligent misrepresentation claims against the Rogerses. *See, e.g.*, *Lutfak*, 2017 WL 2180716, at *7. The same is true with respect to the Halls' claims for breach of contract and unjust enrichment. *See Booher v. Zeig Enters., Inc.*, No. 01-08-00238-CV, 2009 WL 1958493, at *1 (Tex. App.—Waco July 8, 2009, no pet.) (mem. op.) (buyer's contractual agreement to purchase property "in its present condition" precluded unjust enrichment claim because contract covered issue in dispute); *Cherry*, 138 S.W.3d at 39–40 (buyers' agreement to accept the property "as is" precluded breach of contract claim).

We hold that the trial court properly granted a directed verdict in favor of the Rogerses on the Halls' claims. We overrule the Halls' first issue.[11]

---

[11]    Because we affirm the trial court's directed verdict on the Halls' claims against the Rogerses, we do not reach the Halls' remaining issue as to the exclusion of the evidence of their attorney's fees.

**Conclusion**

We affirm the judgment of the trial court.


                                       Amparo Guerra
                                       Justice


Panel consists of Justices Goodman, Landau, and Guerra.